## Pirela v Brooklyn United Methodist Church Home

2025 NY Slip Op 31687(U)

May 8, 2025

Supreme Court, Kings County

Docket Number: Index No. 506461/2021

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 8th day of May 2025.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------------X
NANCY PIRELA as ADMINISTRATOR FOR THE ESTATE
OF ZENON RAMOS-PIRELA,

       Plaintiff,

  -against-


BROOKLYN UNITED METHODIST CHURCH HOME,
BROOKLYN UNITED METHODIST CHURCH HEALTH
SERVICES, INC. and THE BROOKDALE UNIVERSITY
HOSPITAL AND MEDICAL CENTER, LBN, THE
BROOKDALE HOSPITAL MEDICAL CENTER,

      Defendants.
--------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 506461/2021
Mo. Seq. 4

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

NYSCEF #s: 47 – 50, 51 – 97, 99, 100

Defendant The Brookdale Hospital Medical Center ("BHMC" or "the hospital"), sued herein as "The Brookdale University Hospital and Medical Center, LBN, The Brookdale Hospital Medical Center," moves (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment to BHMC on the ground that they are immune from liability in this action under New York's Emergency or Disaster Treatment Protection Act ("EDTPA"), and that they are immune from suit and liability under the federal Public Readiness and Emergency Preparedness Act ("PREP Act"). Plaintiff opposes the motion.

Plaintiff commenced this action on March 18, 2021, asserting claims of medical malpractice, negligence, lack of informed consent, and wrongful death on behalf of Decedent's estate against BHMC and other non-moving co-defendants.

1

[* 1]

With respect to BHMC, the claims against them arise entirely from Decedent's admission to the hospital from April 7, 2020 until his death on April 9, 2020.

On April 7, 2020 at 8:22 p.m., Decedent presented to the emergency department of BHMC from his residential nursing home facility. He was 82 years old with a history of dementia, and he arrived with shortness of breath, hypoxia, and decreased food intake. His family consented to a Do Not Resuscitate/Do Not Intubate order, and he was given supplemental oxygen and palliative care.

At approximately 11:00 p.m. on the night of his admission, Decedent tested positive for COVID-19. Following a chest x-ray, he was diagnosed with COVID-19 associated pneumonia. He continued to receive supportive care and treatment consistent with the hospital's COVID-19 guidelines, including administering hydroxychloroquine and zinc sulfate. He passed away on April 9, 2020.

Plaintiff alleges that BHMC deviated from the standard of care in preventing and treating COVID-19 and that the hospital was inadequately staffed to provide proper care for Decedent.

The EDTPA (Public Health Law former art. 30-D, §§ 3080-3082) was enacted and signed into law at the height of New York's inundation and response to the COVID-19 pandemic in April 2020, and in the context of a host of executive orders declaring a statewide public health emergency. Recognizing the treatment of patients with COVID-19 as a "matter of vital state concern," the act afforded broad liability protections to health care facilities and professionals "from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency." The act was effective retroactively to March 7, 2020.

Under former Public Health Law § 3082 (1) (emphasis added),

2

[* 2]

"1. Notwithstanding any law to the contrary, except as provided in subdivision two of this section, any health care facility or health care professional *shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services,* if:

(a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;

(b) the act or omission occurs in the course of arranging for or providing health care services *and* the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and

(c) the health care facility or health care professional is arranging for or providing health care services in good faith."

Subdivision (2) of the statute provided an exception wherein facilities and providers could be held liable for "willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm . . . provided, however, that acts, omissions, or decisions resulting from a resource or staffing shortage **shall not** be considered to be willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm."

At the time of enactment, Public Health Law § 3081 (5) defined "health care services" broadly to include the diagnosis and treatment of COVID-19, care of a patient "with a confirmed or suspected case of COVID-19," and "the care of *any individual* who presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration" (*see* L 2020, ch 134; *Mera v New York City Health and Hosps. Corp.,* 220 AD3d 668, 669-670 [2d Dept 2023]). The EDTPA was later amended to narrow the scope of that

3

[* 3]

definition to COVID-19-specific health care services, removing the "any individual" subclause, but this amendment took effect non-retroactively on August 3, 2020. The pre-amendment version is therefore the controlling statute as to Decedent's treatment at BHMC from April 7, 2020 through April 9, 2020 (*see Mera,* at 670; *Ruth v Elderwood at Amherst,* 209 AD3d 1281 [4th Dept 2022]).

The EDTPA was repealed on April 6, 2021. The bill contained no express language on whether the repeal was retroactive, but it has been consistently held by all four Appellate Divisions, including the Second Department, that the repeal was not retroactive and that the act remains in force for claims that arose before the repeal date. Thus, covered health care facilities and professionals are still immune from liability with respect to treatment and care rendered on the dates when the EDTPA was in effect (*see Gonnelly v Newburgh Operations, LLC,* 236 AD3d 866, 868 [2d Dept 2025]; *Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc.,* 228 AD3d 618, 619 [2d Dept 2024]).

In support of their motion for summary judgment, BHMC submits, inter alia, their medical records and an affirmation from Halyna Mylko, M.D. ("Dr. Mylko"), an attending physician at BHMC who treated Decedent during the time at issue.

Dr. Mylko states that when Decedent first presented at BHMC with a chief complaint of shortness of breath, he had "classic symptoms of COVID-19" and was tested accordingly. The test returned positive "within hours of his admission." Dr. Mylko affirms that as a confirmed COVID-19 patient in the first wave of the pandemic, "every aspect of his care was impacted by COVID-19." The hospital followed the protocol of performing various lab tests and a chest x-ray, which confirmed COVID-19 pneumonia and hypernatremia. They administered IV ceftriaxone and azithromycin per the hospital's COVID-19 guidelines. He was "placed on

4

[* 4]

contact and droplet isolation precautions" to avoid transmission to other patients and staff, and staff were required to wear personal protective equipment, i.e., masks, gowns, and gloves. Additionally, he underwent an EKG, was prescribed hydroxychloroquine and zinc sulfate, and was given supplemental oxygen and Tylenol for fever. Dr. Mylko states that all these measures were part of the hospital's COVID-19 guidelines in April 2020, in accordance with available public health information and directives. Decedent was DNR/DNI and therefore not a candidate for intubation, and no resuscitation attempts were performed when he was found unresponsive and pulseless on April 9, 2020.

Dr. Mylko further states that confirmed COVID-19 patients at that time required "more dedicated and time-consuming care than non-COVID patients." He states that isolation procedures and protective barriers impacted the mental state and anxiety of such patients, and they were also closely monitored for decompensation, sudden hypoxia, and stroke. Thus, he opines that the treatment of all COVID-19 patients, such as Decedent, was directly impacted by the ongoing outbreak.

In a motion for summary judgment based on EDPTA immunity, the moving defendant must establish "that the conditions for its entitlement to immunity under the EDTPA were satisfied" (*Gonnelly,* at 868). It is essentially the defendant's burden to establish prima facie that (1) the defendant was a health care facility or professional acting in good faith, (2) the alleged acts or omissions occurred in the course of providing health care services during the COVID-19 emergency period, and (3) "the treatment of the individual is *impacted* by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives" (Pub Health Law §§ 3081; 3082 [1] [emphasis added]).

5

[* 5]

Based on the movant's submissions, all conditions of the EDTPA apply to the claims against them herein. First, it is undisputed that BHMC is a health care facility (hospital) which was authorized to provide health care services under the Public Health Law and did so in good faith.

Second, the alleged acts and omissions occurred "in the course of arranging for or providing health care services." As previously discussed, the earliest enacted version of Public Health Law § 3081 (5), effective from March 7, 2020 through August 2, 2020, defined *health care services* very broadly to include "the diagnosis, prevention, or treatment of COVID-19, the assessment or care of an individual with a confirmed or suspected case of COVID-19, *or* the care of any other individual who presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration." Decedent's admission to BHMC clearly falls within that definition. He presented at BHMC during the height of the COVID-19 emergency period, he had a "confirmed or suspected case" of COVID-19 through his entire admission, and he was diagnosed and treated for COVID-19. The Court notes that all Plaintiff's claims against BHMC arose in the course of providing these health care services, regardless of whether Decedent arrived with COVID-19 or contracted it during his first hours of admission as suggested by Plaintiff's counsel.

Finally, the movants have established that Decedent's care was thoroughly "impacted" by the hospital's "decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives." The affirmation of Dr. Mylko, supported by the medical record and public health guidelines from the CDC and New York State Department of Health, demonstrates that the hospital's COVID-19 protocols affected all aspects of Decedent's care in

6

[* 6]

April 2020. He was suspected to have the virus on admission, confirmed positive within hours, and this led to specific isolation procedures, medications administered, and tests performed.

Having met all these conditions, BHMC has demonstrated their entitlement to "immunity from any liability . . . for any harm or damages alleged to have been sustained" in the course of the health care services provided to Decedent in April 2020.

In opposition, Plaintiff fails to raise any issue of fact as to the moving defendant's immunity under the EDPTA. Plaintiff argues for the first time in opposition to this motion that BHMC is liable under the "gross negligence and willful misconduct" exception to the EDTPA, but they have never made allegations of gross negligence or willful misconduct in their Complaint or Bill of Particulars (*see Martinez v NYC Health and Hosps. Corp.,* 223 AD3d 731, 732-733 [2d Dept 2024]; *Mera,* at 670). Further, they made no substantive claim or factual allegations against BHMC which rise to the level of gross negligence or willful misconduct (*see Lara v S&J Operational, LLC,* 2025 NY Slip Op 02582 [2d Dept 2025]). Their repeated allegation that BHMC was "deficient of the necessary medical supplies, beds, medications and staffing" and "willfully inadequately staffed" is without merit, as Public Health Law § 3082 (2) expressly stated that the misconduct/gross negligence exception did not apply to "resource or staffing shortages," a widespread hallmark of the early COVID-19 pandemic.

The EDTPA provided broad immunity to health care providers for alleged harms which occurred during and were impacted by the COVID-19 emergency. Decedent's treatment and care at BHMC from April 7, 2020 through April 9, 2020 clearly fell under the protection of this statute. Accordingly, the movants have established their entitlement to summary judgment, and Plaintiff's claims against them is hereby dismissed pursuant to the EDTPA.

7

[* 7]

Because the movants are entitled to summary judgment under the state law, the Court need not reach the issue of whether they are immune from suit under the federal PREP Act (42 USCA § 247d-6d).

Accordingly, it is hereby:

**ORDERED** that Defendant BHMC's motion (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor on the ground that they are immune from liability under the EDTPA and/or the federal PREP Act, is **granted** pursuant to the EDTPA, and Plaintiff's claims are **dismissed** against the moving defendants only.

The Clerk shall enter judgment in favor of The Brookdale Hospital Medical Center, sued herein as THE BROOKDALE UNIVERSITY HOSPITAL AND MEDICAL CENTER, LBN, THE BROOKDALE HOSPITAL MEDICAL CENTER.

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

8

[* 8]